**STATE of Missouri, Respondent,**

v.

**William Michael MOORE, Appellant.**

**No. WD 32821.**

Missouri Court of Appeals,
Western District.

Nov. 2, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 30, 1982.

Application to Transfer Denied Jan. 17, 1983.

James D. Worthington of Aull, Sherman & Worthington, Lexington, for appellant.

John Ashcroft, Atty. Gen., Carl S. Yendes, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and WASSER-STROM and KENNEDY, JJ.

MANFORD, Presiding Judge.

This is a direct appeal from judgment entered upon jury conviction for conspiracy to commit robbery first degree in violation of § 564.016, RSMo 1978. Appellant was sentenced in accordance with § 558.016, RSMo 1978. The judgment is affirmed.

Appellant presents no less than nine alleged points charging the trial court erred. In summary, these charge error as follows: (1) in failure to dismiss the charges for failure to bring appellant to trial within 180 days, (2) the indictments and information were vague and uncertain as to time of the alleged offenses, and the trial court erred in charging appellant, (3) failure to direct a verdict in appellant's favor because the evidence was insufficient, (4) the trial court erred in the denial of appellant's pre-trial motions, (5) the trial court erred in charging appellant by defective indictment as a dangerous offender because said indictment was vague and uncertain, (6) the trial court erred in its instructions to the jury upon the issue of punishment, (7) the trial court erred in its refusal to permit appellant to cross-examine two witnesses upon two specific matters, (8) the trial court erred in its refusal to grant a mistrial upon the failure of the prosecutor to include all necessary elements of the charged offense in his opening statement, and (9) the trial court erred in its failure to grant a mistrial upon improper comment by a witness.

Since appellant challenges the sufficiency of the evidence, a recital of all pertinent facts is necessary. The evidence reveals appellant was charged by information on January 29, 1980. On March 6, 1980, a Grand Jury handed down a true bill. The appellant was jailed on January 29, 1980.

On January 25, 1980, Peter Kahre and Leonard Johnson met in Corder, Missouri. They decided to travel to Warrensburg, Missouri, allegedly to visit with a military recruiter. Kahre drove the vehicle. En route, Johnson suggested a robbery of the Bucks Thriftway Store in Higginsville, Missouri. Johnson directed Kahre where to drive. They went to a particular street in Higginsville. Johnson left the vehicle and returned a few minutes later. Johnson testified he returned with a handgun which he had retrieved from beneath his grandmother's porch. Johnson then directed Kahre to park in the parking lot of a local funeral home about a block from the Thriftway store. Johnson again left the vehicle, this time taking with him a pair of gloves and a stocking cap belonging to Kahre.

Johnson walked to the parking lot of the Thriftway store. At this time (approximately 9:30 a.m.), an employee of the store was returning from the bank carrying over $4,000.00 in various bills and coins contained in bank money bags. Johnson robbed the employee and returned to Kahre's vehicle with the gun and the money contained in a pillow case. Johnson directed Kahre to return to the location and street where he (Johnson) had first alighted from Kahre's vehicle. Kahre testified he observed Johnson go behind a mobile home trailer and return moment's later without the gun, money, or pillow case. Johnson testified he took the gun and money to appellant who was inside the mobile home trailer of one Betty Woods. The Woods' trailer and that of Johnson's grandparents were in close proximity to each other. Johnson and Kahre then departed for Warrensburg where they were arrested as they approached the city limits. Johnson was questioned by a Missouri Highway patrolman and a special investigator of the Lafayette County Sheriff's office and denied to both any knowledge of the offense. Johnson was then taken to Kansas City and freely took a polygraph examination. He was returned to Lafayette County and questioned by the Sheriff. He continued to deny any knowledge of the offense. Johnson was then returned to Kansas City for a second polygraph examination. Upon his return to Lafayette County, Johnson signed a statement admitting the offense. In his statement, Johnson implicated appellant stating appellant had given him (Johnson) instructions for the commission of the offense.

At trial, Johnson testified that appellant had threatened him with a gun on two prior occasions. Johnson further testified that sometime just prior to January 25, 1980, appellant and he were riding around, during which time appellant pointed a gun at

him and told him to rob Bucks Thriftway Store. Johnson testified he committed the offense out of fear of appellant and in compliance with appellant's instructions.

The defense was alibi. Appellant did not testify. A Kansas City, Missouri attorney and his receptionist testified. The attorney verified he was handling a personal injury case for appellant, but that he did not personally see appellant on January 25, 1980. The receptionist testified appellant was in the law office on January 26, 1980, at about 9:00 a.m. Cross-examination developed that the receptionist had seen appellant both before and after the date of the offense. Another witness testified that appellant "gassed up" his vehicle at a local service station where this witness was employed. This witness recalled the date of January 25, 1980, but stated that, as best he could recall, appellant purchased gas sometime before noon. Betty Woods stated she had dated appellant, but denied appellant ever "lived" in her trailer. She testified her trailer was right next door to the Britt's trailer. (The Britts are appellant's grandparents). She further testified there were only two keys to her trailer and those were in the possession of her mother and herself. She also stated she leaves for work at about 5:30 a.m. and her mother comes to her trailer to get "my daughter off to school every morning as soon as I leave . . ." She testified appellant never had a key to her trailer, could not have entered it alone and that she was not present when Johnson brought the gun and pillow case of money to appellant, as Johnson testified.

Sterling Woods, another witness, testified that he knew appellant, recalled the date of the offense, and picked up appellant at about 8:10 or 8:20 a.m. on January 25, 1980, at the Britt mobile home. This witness stated he drove with appellant to the local service station, purchased gasoline, and drove appellant to the attorney's office in Kansas City. This witness further stated he and appellant arrived at the attorney's office after 9:00 a.m. and left some five to ten minutes later. According to this witness, after they left the attorney's office, they rode around in Kansas City, obtained a haircut, got something to eat, visited appellant's mother, and returned to Higginsville at about midnight. On cross-examination, this witness admitted he really did not know if the events to which he testified occurred on January 25, 1980.

The grandparents of appellant testified appellant lived with them. Mrs. Britt testified she leaves for work each workday about 6:00 a.m. She testified she and her husband freely allowed authorities to search their mobile home and the surrounding area. She disclaimed any knowledge about the pillow case or gun. Mr. Britt testified he leaves for work at about 9:45 a.m. each workday. He also confirmed that appellant lived with him and his wife. He stated he recalled the date of the offense. He disclaimed ever seeing Johnson and knew nothing about the gun or pillow case with the money. He stated appellant left the mobile home around 8:00 or 8:30 a.m. the morning of January 25, 1980.

The final witness for the defense was Jay Frakes. Frakes met appellant in the Lafayette County Jail. This witness was serving time when appellant was arrested and identified Johnson as a result of seeing him in the County Jail and the fact he and Johnson had attended high school together. This witness stated that Johnson discussed the case while they were in jail and told him he had gotten scared and had "[l]ied on Michael Moore in them statements."

During cross-examination, Johnson admitted writing letters to the trial judge which stated he had lied about implicating appellant. On re-direct, Johnson testified that while in jail, appellant came to his cell and told him to write the judge, telling the judge he had lied. Johnson testified he wrote the letters because he feared appellant. There was also introduced another letter written by Johnson to his attorney telling the attorney that if he (Johnson) did not write to the judge and advise the judge

he lied about appellant, that appellant was going to pay his friends in jail $50.00 "to jump on me". There was yet another letter written to the Sheriff by Johnson advising the Sheriff that appellant had threatened him and that is why he wrote the judge the letters. Johnson testified the letters to the judge were not true regarding his statements to the judge that he had originally lied about appellant.

The evidence closed. The jury returned its verdict. Judgment and sentence were entered. This appeal followed the overruling of timely filed after-trial motions.

Under point (1), appellant contends the trial court erred in failing to dismiss the charges against him because he was not tried within 180 days of his arraignment, as required by § 545.780.2, RSMo 1978. Appellant sets forth pertinent calendar dates to support his argument. This information is as follows:

Date of offense—1-25-80; Complaint filed January 29, 1980, and arraignment was conducted March 6, 1980. The first trial setting was for May 6, 1980. The second trial date was for January 6, 1981, and the third and final trial date (actual date of trial) was March 2, 1981.

Following the dates above, it appears from the date of appellant's arraignment to the first trial setting that there was a lapse time of 61 days. From the date of arraignment to the second trial setting, there was a lapse time of 306 days. From the date of arraignment to the final trial setting, there was a lapse time of 361 days. On the surface, it appears appellant's point is well taken under the rule of *State v. Richmond,* 611 S.W.2d 351 (Mo.App.1980). *Richmond* interprets strictly § 545.780.2 and rules that a failure to comply dictates dismissal. It must be noted, however, that the court in *Richmond* made some basic observations regarding this statute. First, the statute is not to be construed as a substitute for a speedy trial as guaranteed by the 6th Amendment to the Constitution of the United States. Second, speedy trials are for the benefit of both the accused and the public. In addition, an accused bears the burden of proving a speedy trial delay was "occasioned" by the state, but an accused does not waive the right to a speedy trial upon failure to demand a trial. In *Richmond,* this court simply concluded that under the facts and circumstances therein the accused had met his burden of proof that the state had "occasioned" the trial delay. From this, it is clear that each case is to be decided upon its own individual facts and circumstances.

A more recent decision on the issue by this court occurred in *State v. Reed,* 640 S.W.2d 188 (Mo.App.1982). This court in *Reed* acknowledged the ruling in *Richmond* as well as *State v. Franco,* 625 S.W.2d 596 (Mo.1982). In *Franco,* our state Supreme Court restated the burden to be borne by an accused at 601:

"In none of the continuances at the request of the defendant did the trial court make the finding required by Section 545.780.3. (5)(a) in order to make the delay therefrom excusable. *However, if the defendant was to receive relief under Section 545.780.5., he had the burden of showing not only the passage of more than 180 days but the further burden of showing that the failure to bring him to trial within that time was 'occasioned' by the state. State v. Newberry,* 605 S.W.2d 117, 123–124 [9] Mo.1980." (emphasis added)

The record herein reflects three trial settings with the last two clearly beyond the 180-day limitation. Unfortunately, the record also reveals the trial judge failed to comply with § 545.780.3(5)(a) in that no findings are upon the record. It appears the trial judge was not cognizant of this section or if he was, the record fails to reveal his compliance therewith. Trial judges are admonished to become aware of this section and in the future to comply with its terms. The question is whether the trial court's failure to enter findings re-

garding the continuance of this case for trial was such a fatal defect as to demand dismissal of the charges against appellant. This court thinks not, especially upon consideration of the facts and circumstances surrounding this issue obtainable from the record.

When this case was set for trial under the date of May 6, 1980, there was pending the receipt of a report of the psychiatric examination of witness Johnson. The record revealed that the defense desired this report, the state had not received it by the May 6th date, and the case was continued. *The record further reveals appellant made the request for the trial setting of January 6, 1981.* This latter date was well beyond the 180-day period prescribed by the statute. The record further reveals the matter was continued for the purpose of securing the deposition of witness Johnson. Securing of the deposition depended upon receipt of the mental examination of Johnson. The result of the events and particular facts and circumstances in the instant case is that delay of this matter was not "occasioned" by the state. In *Reed,* this court quoted from a recent decision by the Eastern District in *State v. Harris,* 639 S.W.2d 122 (Mo.App. 1982) which not only applies but is decisive of this issue in the instant case. In *Harris,* the court declared that where continuances were granted "for the parties" and the court neglected to make findings prescribed by § 545.780.3(5)(a):

"[D]efendant benefited, or at least acquiesced, in the granting of the continuances. A dismissal immediately prior to the time set for trial, when both parties are finally prepared, would have a negative impact on the administration of justice resulting in still further delays for the defendant and the public. For these reasons, the trial court did not err in refusing to dismiss the case for a technical violation of the speedy trial act."

In the instant case, it is shown that appellant, by request, *caused a delay from May 6, 1980 until January 6, 1981.* He cannot now be heard to complain that the court committed error by its refusal to dismiss the charges because trial occurred more than 180 days after his arraignment.

If our trial judges would become familiar with the applicable statutes and adhere specifically to the mandate therein, this issue, on appeal, if not abolished entirely, would be more readily decided as to the direct result of clarity of the record and the entries of the trial courts. In *Franco, Harris, Reed,* and *Richmond,* as well as in our courts, the burden of proof to be borne by an accused has been reaffirmed, in that the accused must show, by sufficient proof, that delay of trial was "occasioned" by the state. In applying the rules announced in *Richmond, Franco, Harris,* and *Reed,* it is found that, under the facts and circumstances of the instant case, appellant has failed to bear his burden of proof that delay of trial was "occasioned" by the state. There is no merit to point (1) and it is ruled against appellant.

Under point (2), appellant charges the trial court erred in charging him because the indictments and information were vague and uncertain as to the time of the alleged offense.

■ Under this point, appellant's argument commences with the unequivocal conclusion of his innocence. From that beginning, he points out that, according to the indictment and information, the alleged conspiracy occurred while appellant and Johnson were allegedly riding around in an automobile. Appellant then attacks the statements made by Johnson. Appellant points out that, in his deposition, Johnson stated he "didn't know" when the conspiracy occurred, "maybe just a few days before" (prior to January 25, 1980). Appellant next points out that at trial, Johnson testified it was "about a week before the robbery took place." Appellant then contends that "as a practical matter, this defendant cannot take the witness stand on this vague, uncertain charge and attempt to

share with the jury the truth of where he, the defendant, may have been when this specious, alleged car conference and conspiracy took place without having some ability to know when it is alleged to have happened ..." Appellant appears to be trying to convince this court he was prevented from testifying that (a) the conspiracy ever occurred, or (b) of his whereabouts during the period of time preceding January 25, 1980. Neither suggestion contains substance. Respondent meets appellant's contention by correctly pointing out that this point is raised for the first time on appeal and, hence, is not properly preserved. *State v. Miller,* 604 S.W.2d 702, 705 (Mo.App.1980). Hence, any review would be for plain error pursuant to Rule 29.12(b). Our statutes prescribe the requirements for indictments and information. Section 545.-030.1, RSMo 1978 provides:

"No indictment or information shall be deemed invalid, nor shall the trial, judgement or other proceedings thereon be stayed, arrested or in any manner affected: * * *

(5) For omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offence (sic); nor

(6) For stating the time imperfectly; nor

(7) For stating the offense to have been committed on a day subsequent to the finding of the indictment or information, or an impossible day, or on a day that never happened; nor * * *

(18) For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

█ In the instant case, the time of the offense (the conspiracy) was not the essence of the offense. In addition, the information/indictment charged the offense occurred on or about January 25, 1980, and in a second information, it was charged that the conspiracy offense occurred, "on an unknown day in January 1980." There is nothing from the review of the indictment/information which discloses such a span of time so as to "place an impossible burden" upon appellant as to the offer of evidence of his whereabouts over a period of time. *State v. Clark,* 509 S.W.2d 740, 743 (Mo.App.1974). There is nothing upon the face of either the indictment or the information that renders any of them so vague or uncertain so as to render them defective. While witness Johnson did not testify with precision as to the date and time of the offense, his testimony is not contradictory or inconsistent even though he testified it was a "short time", a "few days" or "about a week". Appellant points to these variances as to time, but fails to show this court how they yielded any adverse effect upon his ability to defend against the charge. In *State v. Murray,* 609 S.W.2d 192, 196 (Mo. App.1980), this court, in addition to restating the rule that an information need not specify the time an offense was committed unless time is of the essence to the offense, also declared that an allegation that theft occurred between prescribed dates, coupled with evidence establishing that the theft occurred between those dates, did not render the information defective since it was "sufficient to apprise appellant of the offenses charged and to bar another prosecution therefor." In *Murray,* this court cited *State v. Woodward,* 130 S.W.2d 474, 475 (Mo.1939), wherein a charge that, "the act was done between _____ day of July 1937 and the 4th day of May 1938" was held to be sufficient. *Murray* also cites *Tucker v. Kaiser,* 176 S.W.2d 622, 624 (Mo. banc 1944), which held sufficient an amended information alleging commission of the taking of monies while in the possession of the accused "on or about the 15th day of October A.D. 1942 and on other dates within a period of three years prior." The court also cited *State v. Newhart,* 539 S.W.2d 486, 490 (Mo.App.1976). See *Murray* at 196.

There was no error, plain or otherwise, in the trial court's charging of appellant because neither the wording of the indictment, nor the information, was so vague and uncertain as to warrant dismissal of the

charges under the authority of § 545.030 or *Murray, Woodward, Tucker* or *Newhart.*

There is no merit to point (2) and it is held against appellant.

Under point (3), appellant charges the trial court should have sustained his motion for directed verdict because the evidence was insufficient and its failure to do so constituted error.

Appellant's entire argument under this point attacks the credibility of Johnson's testimony.

▮ It is unnecessary to again state the pertinent applicable facts recited above. Appellant contends that "uncorroborated evidence of an 'accomplice' will sustain a conviction of conspiracy only if it is substantial and creditable." Although this is a correct black letter statement of the rule, it must be pointed out that we review the evidence in a manner most favorable to the state and in support of the jury's verdict. *State v. Wood,* 596 S.W.2d 394 (Mo. banc 1980); *State v. Gamache,* 519 S.W.2d 34 (Mo.App.1975). In addition, in conspiracy cases "a conviction may be had on the uncorroborated evidence of an accomplice unless such testimony is so lacking in probative force as not to amount to substantial evidence." *State v. Powell,* 433 S.W.2d 33, 34 (Mo.1968); *State v. Evans,* 545 S.W.2d 694 (Mo.App.1976); *State v. Rollie,* 585 S.W.2d 78, 90 (Mo.App.1979). In *State v. Newberry,* 605 S.W.2d 117, 118 (Mo.1980), our state Supreme Court stated:

"The fact that a witness's testimony may to some extent be contradictory does not prevent its constituting substantial evidence. Inconsistencies in testimony are questions for jury resolution. The testimony of a single witness may be considered sufficient although the testimony may be inconsistent."

▮ Under the facts and circumstances of the instant case, it cannot be said the uncorroborated testimony of Johnson was "lacking in probative force as not to amount to substantial evidence." *Powell* and *Evans, supra.* Appellant herein fails to set forth with specificity the claimed inconsistencies within Johnson's testimony which makes such testimony unsubstantial. The record fails to disclose inconsistencies in that testimony which would render it incredible or unsubstantial. *Rollie, supra.* The inconsistencies of Johnson's testimony were of a minor nature, at best, and were best left for resolution by the jury. *Newberry, supra.*

Point (3) is meritless and is ruled against appellant.

Under point (4), appellant charges that the trial court erred in overruling his pretrial motions. In his brief, appellant sets forth each of his motions and argues the alleged error relative to each. In disposing of this point, we address each motion and the accompanying arguments regarding each in the precise order presented by appellant.

(a) "Motion for Discovery and Inspection and the Motion for Exculpatory Evidence (Brady Motions)"

Aside from a broad, general declaration that these motions were specific and not general in nature, appellant offers no real argument on this issue. The record on the other hand reveals that when these motions were argued, respondent agreed to make *all* information in its file available to appellant. Appellant agreed to this approach which was approved by the trial court. The record also discloses that respondent provided appellant with information relative to the plea bargain between the state and Johnson. Furthermore, respondent produced Johnson for deposition by appellant. From the record herein, we conclude that respondent complied not only with the rule announced in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) but with our own Rule 25.03 as well. There is no merit to (a) of point (4) and it is ruled against appellant.

(b) "The Defendant's Request for Discovery Under Supreme Court Rule 25.03

and Specifically the Request for Polygraph Information and Mental Examination of Leonard Johnson"

■■ Under this point, appellant merely contends he was entitled to the information because of the "prophylactic" provisions of Rule 25.03, as well as the rule in *State v. Rains,* 537 S.W.2d 219 (Mo.App.1976). It must be noted initially that *Rains* is misconstrued by appellant. That case did not address the precise issues attending the motion filed by appellant. The court in *Rains* acknowledged the right of an accused to discovery, but the determination in *Rains* was upon the untimely filing of the pre-trial motion. As to the particular information sought under this motion (i.e., the results of the polygraph examination and mental examination of Johnson), the trial court reasoned as follows. The trial court was aware of our state Supreme Court's decision in *State v. Biddle,* 599 S.W.2d 182, 185 (Mo. banc 1980), which declared that the results of a polygraph examination are inadmissible and since they were inadmissible, appellant had no right to the results thereof. On this point, see also *State v. Shives,* 601 S.W.2d 22, 27 (Mo.App.1980) and *State v. Lieberknecht,* 608 S.W.2d 93, 101 (Mo.App. 1980). As regards the polygraph examination results, appellant sought to cross-examine Johnson from evidence inadmissible under *Biddle, Shives,* and *Lieberknecht, supra.* There is no merit to appellant's contention as regards the court's ruling on the polygraph examination results. With regard to the test results of the mental examination of Johnson, the trial court did not err in its denial of such request. The issue of availability of the results of psychiatric examinations of a witness who testifies against an accused has been ruled by our courts. *State v. Doepke,* 536 S.W.2d 950, 951 (Mo.App. 1976), *United States v. Evans,* 454 F.2d 813, 819 (8th Cir.1972). The rationale supporting refusal to provide this information is its confidentiality. There is no merit to appellant's contention that he was entitled to the test results of the psychiatric examination

of Johnson. In addition to the foregoing, appellant argues he was, subject to the same motion, entitled to the arrest records of witnesses appearing for the prosecution. *State v. Drake,* 518 S.W.2d 335, 336 (Mo. App.1975). There is no merit to (b) of point (4) and it is ruled against appellant.

(c) "The Defendant's Request for Investigative Help, Research Analyst and Other Experts and Services under Section 600.150, RSMo."

■ Appellant here contends that there exists a great disparity between the resources of the state and that of the public defender. The appellant's argument is summed up in the following sentence, "Why is it that the State has all of the financial resources necessary to employ people at reasonable prices when the defendant is denied such information? This matter should be ruled against the State out of hand and the matter should be remanded to the trial court for further proceedings after allowing this investigation and research help." Appellant argued for appointment of a law student, at the state's expense, to assist in preparation of the case for trial.

The gaping hole in appellant's argument is his failure to advise the trial court or this court how the trial court's refusal to grant this motion prejudiced his right to due process. Appellant presents no showing that such assistance was necessary to the preparation of the defense. This is a basic prerequisite. *State v. Brown,* 599 S.W.2d 498, 505 (Mo. banc 1980), cert. denied 449 U.S. 985, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980) and *State v. Carroll,* 629 S.W.2d 483 (Mo.App. 1982). If appellant is possessed of such strong conviction that the public defender or other appointed counsel need additional funding or counsel assistance, then his argument should be directed to our General Assembly. The allegation, real or imagined, that the public defender or other appointed counsel is placed at a disadvantage, has no place in appellate argument. This is particularly true in the instant case, where

appellant cannot even advise this court as to what end and for what purpose such additional investigative and research help would have been directed. There is no merit to (c) of point (4) and it is ruled against appellant.

(d) "The Defendant's Motion in Limine"

This motion was nothing more than a request that police officers who appear as witnesses not wear their uniforms. It is appellant's contention that the wearing of the uniform, "merely highlights the inequity between the parties and tends to favor the testimony of the officers and grants to those officers' testimony more credibility than the other witnesses who are testifying."

This argument has even less substance than the argument offered by appellant under (c) above. Appellant has failed to show how the wearing of a uniform by law enforcement officials has prejudiced him. This court does not agree that by simply wearing a uniform an officer's testimony will be given "more credibility". A solid grasp of the tools and techniques of examination of witnesses and their use, coupled with the substance of testimony or lack thereof by a witness form the crucible from which the trier of fact formulates his or her determination of the "credibility" of a witness. The use of these methods validated over time, in addition to a proper focus on specific evidence, is a better course to follow than some speculative conclusion about what a uniform provides. There is no merit to (d) of point (4) and it is ruled against appellant.

(e) "The Defendant's Motion for Costs to be Advanced by the County Court"

■ Appellant offers nothing more than an abbreviation of his argument displayed under (c) above. There is no purpose to be served in restating this court's response. It suffices to state that appellant makes no showing of *who* and to what end the advancement of costs to him were necessary or to what they were to be applied. There

is no merit to (e) of point (4) and it is ruled against him.

Each of the motions and the rulings of the trial court in response to them have been carefully reviewed. Appellant fails to disclose to this court or to the trial court the necessity of granting these motions. As a result, he has failed to reveal how the trial court erred in its denial of said motions.

There is no merit to point (4) in toto and it is ruled against appellant.

■ Under point (5), appellant charges the trial court with error in "charging" appellant with a defective indictment respecting the allegation that appellant was a "Dangerous Offender".

Appellant makes a sweeping and general charge that the indictment and the two informations were unconstitutionally vague upon a failure of § 558.016.3 to accurately and specifically define, "Dangerous".

The sum total of appellant's position under this point is his desire to reduce his sentence from 20 years to 10 years.

A review of the second amended information, filed with Leave of Court, charges appellant as a "dangerous offender" punishable by an extended sentence pursuant to § 558.016, RSMo 1978. Had appellant elected to research § 558.016, he would have found under subsection 4, the following:

"4. A 'dangerous offender' is one who:

(1) Is being sentenced for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person; and . . ."

The information, as amended, advised appellant of the specific dangerous felony conviction, robbery first degree, and the specific statute, (§ 556.061[8], RSMo 1978).

Contrary to appellant's contention, the amended information was not vague or un-

certain. Furthermore, it set forth with particularity the allegation of "dangerous offender" against him. Appellant is incorrect when he concludes that neither the statute nor the information herein failed to properly define "dangerous offender".

There is no merit to point (5) and it is ruled against appellant.

■ Under point (6), appellant charges the trial court erred in misinforming the jury by its instructions that they were being allowed some discretion in any penalty to be assessed because the court retained complete control of all sentences and penalties. Appellant further charges that no hearing was held as prescribed by § 558.-021, RSMo 1978.

Appellant's contention that no hearing was held as prescribed by § 558.021 flies directly in the face of the record supplied to this court. The court record shows an entry of June 8, 1981, wherein a sentence of 10 years was imposed in conformity with the jury's verdict coupled with imposition of an enhanced sentence of 10 years "for dangerous offender act". This same entry reveals that appellant was present in person, accompanied by the same counsel now presenting this appeal. Appellant's reliance upon *State v. Berry,* 609 S.W.2d 948 (Mo. banc 1980) is not applicable to the instant case because, unlike *Berry,* the record reveals that both parties were before the trial court and that sentence was imposed in accordance with the "dangerous offenders act". Appellant fails to advise this court how and upon what instruction the trial court misled the jury. There is no merit to point (6) and it is ruled against appellant.

Under point (7), appellant charges trial court error in denying appellant the opportunity to cross-examine the state witnesses on two specific matters. These matters were:

(1) "The paucity of investigation in this case including but not limited to information relating to polygraph tests which were given and the failure to give others and

(2) The mental condition and examination of Leonard Johnson."

The argument in support of this point was presented in varied form under point (4)(a) and (b) above. What appellant sought from the trial court was permission to cross-examine witnesses upon evidentiary matters which were inadmissible. The trial court did not err in appellant's request to cross-examine Johnson and Kahre. There is no merit to point (7) and it is ruled against appellant.

■ Under point (8), appellant charges the trial court erred in failing to sustain his motion for a directed verdict at the close of respondent's opening statement because the opening statement failed to include all necessary elements of the offense charged.

The record before this court contains the following motion presented by appellant's counsel at the close of the opening statement by respondent:

"The defendant moves for a directed verdict and asks that the jury be discharged on the basis that the prosecuting attorney has failed to state facts or suggested evidence which would direct itself to all of the issues of the present pending information."

There is nothing further in the record in this case wherein appellant advises the court that the opening statement was deficient. There is nothing more than the foregoing overbroad statement requesting a directed verdict.

Review of respondent's opening statement discloses that the jury was advised the case involved the crime of conspiracy to commit armed robbery. The statement advised the jury of the range of punishment. The statement included a brief description of the conspiracy wherein appellant and Johnson rode around the city of Higginsville and appellant outlined the robbery to Johnson. The statement also included details as to how appellant threatened Johnson with a handgun and Johnson's final agreement to carry out the robbery under

appellant's directions. The statement also included details of the actual commission of the robbery by Johnson. The statement further included the discussion of the fact that conspiracy to commit armed robbery and armed robbery are two distinct crimes. The statement contained other specific details about Johnson and Kahre.

Contrary to appellant's contention, the opening statement of respondent was sufficient to withstand appellant's motions for directed verdict. Appellant's reliance upon *State v. Fenton*, 499 S.W.2d 813, 815 (Mo. App.1973) is misapplied to the extent that appellant suggests *Fenton* mandates a directed verdict in this case. The court in *Fenton* reversed the conviction because the prosecutor, in his opening statement, injected the fact that accomplices of the accused had pleaded guilty. The court ruled this injected "venom" into the statement. *Fenton* is also noteworthy because the court in that case reaffirmed the guidelines for the state's opening statement. The court stated, "The prosecuting attorney in a criminal prosecution has the duty to 'state the case' [§ 546.070(1), RSMo 1979] and in general advise the jury as well as the defendant of the facts relied upon for a conviction." Taking this principle and applying it to the present appeal, the record verifies this is exactly what occurred in the instant case. The trial court properly denied appellant's motion. There is no merit to point (8) and it is ruled against appellant.

■ Under his final point (9), appellant charges that the trial court erred in its refusal to grant him a mistrial because a witness for the state made an improper statement about appellant's past criminal record.

This entire issue arose during the direct examination of witness Johnson. The prosecutor was inquiring of Johnson about the details of appellant and Johnson in the automobile and how Johnson became involved in the matter. The pertinent portion of the record reveals:

"Q. Did Mr. Moore give you something in that car that day?

A. Yes.

Q. What?

A. The gun.

Q. Did he say anything to you when he gave it to you?

A. Yes, he said, 'Here, use this'.

Q. Mr. Johnson, when you got that gun, why was it you would still be afraid of Mr. Moore?

A. Repeat that.

Q. Once he gave you the gun, why would you be afraid of Mr. Moore?

A. Because he's been in the penitentiary before, and I'm scared of him, scared he might hurt me because he had threatened me two times before that.

Q. Was this the same gun Mr. Moore pulled on you before?

A. No."

Counsel asked to approach the bench and appellant's counsel stated to the court:

"I'm sorry, Your Honor, but the witness is making improper comment. This is the state's own witness and now he's commenting on Mr. Moore's past conduct, and I think its an improper statement and I ask for a mistrial and ask the jury be discharged."

The court overruled appellant's motion for mistrial. There followed a discussion by counsel and the court. Appellant's counsel asked the court to instruct the prosecutor to in turn instruct the witness not to make further reference to appellant's past history. The court asked appellant's counsel if he wanted such instruction made before the jury. Appellant declined the offer stating through counsel, "No, I think he should make that very private." Further discussion included appellant through counsel stating, "... I'm asking specifically that we not highlight it, that we not direct the jury, but that we leave it alone ..."

It is evident from a review of the whole record that the line of inquiry pursued by

the state was to point out why, if Johnson had physical control of the gun after appellant handed it to him, Johnson was still fearful. The questions were propounded to establish the fact that appellant had threatened Johnson on prior occasions. Johnson's statement that appellant had been in the penitentiary in the past was an unsolicited passing comment by the witness. Such statement under the facts and circumstances did not, upon motion, warrant the drastic action of a mistrial. The grant of a mistrial is within the discretion of the trial court and is to be granted "where error committed during the course of the trial is so grievous and prejudicial that its effect cannot be removed in any other way." *Kansas City v. LaRose*, 524 S.W.2d 112, 120 (Mo. banc 1975), *State v. Graham*, 527 S.W.2d 936, 942 (Mo.App.1975).

Under all the facts and circumstances of this case, Johnson's passing and unsolicited reference to appellant's having been in the penitentiary previously also bore upon the issue of Johnson's fear of appellant. In *State v. Lee*, 626 S.W.2d 252, 254 (Mo. banc 1982), our state Supreme Court ruled that introduction of outstate prison records and testimony by a co-conspirator that he and the accused were escapees was proper, and an exception to the rule prohibiting evidence of other crimes, when such went to establish identity, motive, intent, a common scheme or plan and to install fear in the victim. Johnson testified that he initially refused to carry out the robbery when it was suggested by the appellant. Johnson further testified that he agreed, out of fear of appellant. This evidence, including the unsolicited response by Johnson, was probative of Johnson's fear of appellant.

The trial court did not abuse its discretion in denying appellant's motion for a mistrial. On the contrary, the record reveals the trial judge, short of a mistrial, offered to accommodate appellant in any manner appellant selected. After a discussion between counsel and the court, it was decided the most appropriate approach was to draw no further attention to appellant's past penitentiary history. There is nothing upon the

record herein where any other reference was made to that fact. It cannot be said, under all the facts and circumstances herein, that appellant was prejudiced in his rights to a fair trial.

Point (9) is without merit and is ruled against appellant.

The judgment is affirmed.

WASSERSTROM, J., concurs in separate concurring opinion.

KENNEDY, J., dissents in separate dissenting opinion.

WASSERSTROM, Judge, concurring.

I agree with my brother Kennedy that the delay in bringing defendant to trial should be held to have been "occasioned" by the state. This conclusion rests upon the fact that the Attorney General's brief filed in this case makes an express, formal admission to that effect. I see no reason to relieve the state from that deliberate concession.

However, that point does not close the inquiry which must be made in this case. There remains for consideration the question of whether the trial court should have invoked the sanction of dismissal. Section 545.780.5 provides that if a defendant is not brought to trial within 180 days, then the trial judge "may" dismiss the information. That section goes on to provide that in determining whether to dismiss the case, "the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this section and on the administration of justice."

The record in this case shows a trial setting for May 6, 1980. However defendant wanted to take the deposition of the key witness Johnson, who was scheduled to testify on behalf of the state. Johnson was a participant in this crime and had his own

attorney, who resisted giving permission for Johnson's deposition. Johnson's lawyer advanced the reason for this refusal as being a substantial question with respect to Johnson's mental competency. Because of that question, Johnson underwent psychiatric evaluation and the psychiatric report was not received until August 25, 1980. The argument between Johnson's lawyer and defendant's lawyer about taking Johnson's deposition still continued, however, and Johnson's deposition was not actually taken until February 12, 1981. Soon thereafter, on March 2, 1981, the trial commenced.

It seems quite clear from the record that this delay in taking Johnson's deposition was the result of the controversy between defendant's lawyer and Johnson's lawyer, with the Prosecuting Attorney being reduced pretty much to a state of frustration. This appears from the following portion of the hearing before the trial court:

"THE COURT: —at one time, and we continued the case because you wanted to take Mr. Johnson's deposition, and they said if he was crazy, that we couldn't take his deposition. That was his attorney's defense.

MR. WORTHINGTON: Right.

THE COURT: And you and his attorney played the ball back and forth between you, and to the State's—

MR. WORTHINGTON: Consternation.

THE COURT: —consternation, that's right, and—

MR. WORTHINGTON: Your Honor, that is exactly correct, that we did request the taking of the deposition of Mr. Johnson, and we even set the deposition and served him with proper subpoenaes, notices, and he filed a motion to quash that and appeared here in court with his attorney, Mr. William Merryman, in order to quash the taking of his deposition upon that very basis, that if he were in fact mentally disturbed or under some kind of emotional or mental handicap, that it wouldn't be proper for us to take his deposition. . . . "

Under the peculiar facts of this case, there were certainly extenuating circum-stances tending to excuse the state's failure to get this case to trial within the 180 day statutory period. Also to be considered is the fact that defendant does not claim to have been prejudiced by the delay. While failure by a defendant to show prejudice is not decisive, a lack of prejudice may be considered by the court in determining whether to dismiss under Section 545.780.5. *State v. Richmond,* 611 S.W.2d 351, 355 (Mo.App.1981); *State v. Lawson,* 630 S.W.2d 185, 188 (Mo.App.1982).

Finally, we have for consideration "the impact of a reprosecution on the administration of this section and on the administration of justice." As pointed out by the trial court, at the time defendant made his motion to dismiss, a jury had already been summoned and the case was ready for trial. The trial court was of opinion that justice would be better served by proceeding to trial immediately, rather than to dismiss the case without prejudice (which it had the authority to do under the statute) and thereby force postponement of the trial to still a later date. It is most difficult to perceive how the interest of speedy justice could be served by following the latter course.

The dissenting opinion states that the discretion of the trial judge under Section 545.780.5 is confined "within a narrow range." That of course does not tell us very much. Whether narrow or wide, the trial court still has discretion; and appellate courts should not reverse an exercise of discretion unless the trial court has committed an abuse of discretion. *See State v. Ratliff,* 633 S.W.2d 267, 270 (Mo.App.1982). In my opinion, there was no abuse of discretion here. On that basis I join in the conclusion of the majority opinion.

KENNEDY, Judge, dissenting.

It is a pity to see a bold and innovative statute emasculated by a gingerly and timorous judicial interpretation.

I have three points of disagreement with Judge Manford's principal opinion and with Judge Wasserstrom's concurring opinion.

The points of disagreement could be summed up in a single point, namely, that they represent a "Retreat from Richmond," *State v. Richmond,* 611 S.W.2d 351 (Mo. App.1980). If *Richmond* is too strong medicine, let it be forthrightly overruled, saving the time, ink and paper now spent in finding ways around it.

Either way—by overruling *Richmond* or by its circumvention—we rob this good statute of the remedial force the legislature intended it to have.

My first point of disagreement is with the principal opinion's holding, contrary to the attorney general's concession, that the delay of trial was not "occasioned by the state". Underlying that holding is the wrong idea of the prosecutor's and the court's responsibility aggressively to advance a case to trial. It seems to say that if the defendant seeks a delay, or if he acquiesces in a delay, that the prosecutor and the court are excused from responsibility for the delay.

Secondly, I disagree with Judge Wasserstrom's concurring opinion in its holding that the trial court's ruling upon a defendant's speedy trial motion to dismiss may be reviewed only for abuse of discretion. It does not recognize that the speedy trial statute introduces an innovation. The trial judge's decision on the matter of continuances and on motions for dismissals are subject to close and skeptical scrutiny by this court. The trial court's rulings must be justified by him upon the record and reviewed for the proper exercise of discretion. The difference is more than semantics.

Third, I disagree with the principal opinion's casual treatment of the failure of the trial judge to explain upon the record the reasons for continuances granted in the

case. It is not entirely clear to me whether the principal opinion agrees with our recent case of *State v. Reed,* 640 S.W.2d 188 (Mo. App.1982), which holds that continuances are not excludable which the trial court does not justify upon the record—but whether it does agree with *Reed* or not, it applies as its only sanction an impotent finger-shaking.

What I now have to say is in amplification of those three points:

One of the most persistent criticisms of our criminal justice system is that it is too slow. The Speedy Trial Statute is aimed at that fault. Still it allows six months "free" time to get a case to trial, plus the time necessarily consumed by a variety of pretrial procedures. Does anyone argue that is not enough time? But here before us is a case that took 361 days from arraignment to trial. The attorney general says that only 20 days of that 361 days was excludable time, leaving 341 days—almost twice the unaccountable time allowed by the statute!

The attorney general does not even argue that the delay was not occasioned by the state, but expressly concedes that it was, by the definition of *State v. Richmond,* 611 S.W.2d 351, 357 (Mo.App.1980). We said there: "A delay may be 'occasioned' by the state by mere neglect, by failure actively to move the case forward, by simple inertia . . . ." That definition has been endorsed by our Supreme Court in *State v. Franco,* 625 S.W.2d 596 (Mo.1982), and in our most recent case of *State v. Reed,* supra. The majority opinion does not accept this concession by the attorney general, but finds to the contrary that the defendant has not shown that the delay was occasioned by the state.[1]

---

1. As to the meaning of the word "state" in the phrase "occasioned by the state", note Judge Wasserstrom's footnote No. 2 in *State v. Reed,* supra, wherein he said:

> It is suggested by some, although not argued in this case nor specifically dealt with by any Missouri case, that in the Speedy Trial context the "state" (in the phrase "occasioned by the state") is not the prosecuting attorney alone but includes also the court.

*Cf. State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 590, 592 (Mo.App.1980); *State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53, 58–59 (Mo.App.1980). Federal decisions under the Federal Speedy Trial Act, 18 U.S.C.A. Sections 3161–3174 (West Supp.1982) and Fed. R.Crim.P. 50(b) emphasize the joint responsibility of prosecutor and court to advance criminal cases by affirmative action. The court may not leave the expedition of crimi-

The majority opinion says: "The result of the events and particular facts and circumstances in the instant case is that delay of this matter was not 'occasioned by the state'". Let us leave out of consideration the concession by the attorney general, and let us look at the record.

The docket sheet shows the following with respect to trial settings and continuances:

March 6, 1980—Arraignment. Case set for trial June 9.

April 14—*Defendant's* motion for early trial setting sustained and case set for trial May 6.

The case was not tried on May 6. The docket does not show why not. To fill in this gap in our information, we go to the transcript of the hearing on the Speedy Trial Motion to Dismiss, held as the March 2, 1981, trial date approached. The hearing consisted of a conference among the court, the prosecuting attorney and the defense attorney. Defense counsel Worthington said:

What occurred was that we were ready for trial on May 6, on the defense side, and that we requested the psychiatric information on Mr. Johnson (Johnson was a co-defendant and was the state's principal witness-ed) from the prosecutor's office, and they didn't have it, and we said we were ready to go to trial, but we wanted that information, and, therefore, he continued it in order to get it, if I remember correctly.

This appeared to be an explanation of Mr. Worthington's earlier statement that "Mr. Verdught (the then prosecuting attorney) asked that the trial setting be continued from May 6." A further exchange between the court and Mr. Worthington disclosed that Worthington had wanted to take Johnson's deposition in preparation for trial, and had served notice and a subpoena; that Johnson's attorney had filed a motion to

quash on the ground that Johnson was "mentally disturbed or handicapped". The time of these events is not clear, but would have been before the May 6 trial setting. Said Worthington, ". . . And we at all times, I believe, asserted that we were ready for trial and were ready to assert our rights." Then the following:

THE COURT: But you did want his deposition prior to going to trial?

MR. WORTHINGTON: Sure. We were ready to take it.

THE COURT: And we then had to wait to take his deposition until we had a declaration by the psychiatrist as to whether he was sane or insane.

MR. WORTHINGTON: Even if he were insane, I think I had a right to take his deposition.

If it be conceded that the passing of the May 6 trial date may be laid to the defendant—a doubtful proposition—there remained still plenty of time to bring the case to trial within the 180-day period. We do not know when the psychiatric examination was made, whether before the May 6 continuance or afterward. At any rate, the psychiatric report was actually received on August 25. What it showed we do not know. Mr. Johnson, the witness to be deposed, was in jail and therefore immediately accessible during the whole time. The 200 days from the arraignment (180 days free time plus 20 days excused time, according to the state's calculations) came to an end on September 22.

We return to the docket. The next entry is October 20. On that date the following entry was made:

"October 20, 1980—Case set for trial January 6, 1981."

Even by October 20, 1980, the case was 22 days past the Speedy Trial time limit, but the case was set for a trial date yet two and a half months in the future.

The next entry was made January 6, 1981:

nal trials to the initiative of prosecuting attorneys. See *United States v. Didier,* 542 F.2d 1182, 1187 (2d Cir.1976); *United States v. Roemer,* 514 F.2d 1377, 1382 (2d Cir.1975); *United States v. Drummond,* 511 F.2d 1049,

1054 (2d Cir.), cert. denied, 423 U.S. 844 [96 S.Ct. 81, 46 L.Ed.2d 65] (1975); *United States v. Rodriguez,* 497 F.2d 172, 175–76 (5th Cir. 1974).

"January 6, 1981—Case set for trial March 2, 1981."

The last continuance was requested by the defendant—but by this time the 180-day period was long since passed. The case was finally tried on March 2, 1981.

The prosecution offered nothing by way of justification for the delay. In the hearing on the Speedy Trial motion, from which we have quoted, prosecuting attorney Perry (who had evidently taken office January 1, 1981) said: "In that connection, Judge, most of these events that you have been discussing with defense counsel happened prior to my tenure here in office. So, I can't really intelligently engage in the conversation." The trial challenged none of Mr. Worthington's assertions and seemed to agree to them. So there is no factual dispute about the trial delay. The prosecution is absolutely without any excuse on this record for the trial delay.

The principal opinion would say the tardiness of the trial was "occasioned by the state" only if the prosecution by obstructive action and by demonstrable delay tactics delayed the defendant in getting the trial he was insisting upon. (I exaggerate the principal opinion's position only slightly in order to make a point.) The statute as interpreted by the principal opinion has made no change in the law as it was before the statute. There is not a single showing in this record that the prosecution ever requested an early trial, ever resisted a continuance, ever took any step to clear the path to trial. The prosecution was utterly passive. Small wonder the attorney general here acknowledges that the delay was occasioned by the state.

The trial court made the following ruling upon the defendant's motion to dismiss: "Well, under the circumstances, then, I am going to overrule your motion, particularly in view of the fact that the case is set for Monday, and we have got the jury coming." The court's oral findings on the motion were as follows: "Well, that was basically the theory of my speech earlier that most of the delay in the cases of Johnson and Moore has been occasioned by the fact that we

waited so long to get the psychiatric report on Johnson."

Subsection 5 of § 545.780, RSMo 1978, says:

If a defendant is not brought to arraignment or trial within the time limit required by this section, the trial judge may dismiss the information or indictment upon motion by the defendant and a showing by defendant that the failure to have the trial commence within the time limit specified herein was occasioned by the state. . . . In determining whether to dismiss the case, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this section and on the administration of justice. The court shall make a record showing the action taken in regard to the dismissal . . . of the case and show on the record the reasons for such action.

With reference to that section, we said in *Richmond* that the purpose of this unusual requirement, i.e., "to show on the record the reasons for such action", was to confine the trial judge's discretion within a narrow range, and to make his discretionary action reviewable by the appellate court. *State v. Richmond*, 611 S.W.2d at 356. We ordinarily indulge in a presumption of right action on the part of the trial court in discretionary matters. We do not have that luxury under this statute. Whether we like or do not like this disturbance of our comfortable traditional appellate function, we are to judge the sufficiency of the trial judge's reasons for his dismissal or failure to dismiss. The principal opinion impotently scolds and wheedles a compliance with this statute's directives. It makes them precatory rather than mandatory. That is the mandate of this statute. Shorn of the presumption of right action, the reasons stated by the trial judge for overruling the motion to dismiss were wholly insufficient.

The trial court based his denial on the motion to dismiss upon the inconvenience

attending a dismissal when the case was at the ready for trial. In *State v. Harris,* 639 S.W.2d 122 (Mo.App.E.D.1982), this feature was considered. A dismissal at that late date would have a negative impact upon the administration of justice *in that case.* But I think the statute has a broader meaning than that. The "impact of a reprosecution on the administration of this section and on the administration of justice" looks *at this case,* to be sure, but it looks past this case. It looks also at the prophylactic effect of a dismissal. Let a few cases be dismissed and rare will be the case which is not brought to trial within the generous statutory period. The effect upon the administration of § 545.780, supra, and upon the administration of justice, looking *at the system,* can only be salutary ... if indeed it is a worthwhile social objective to bring criminal cases to an early, but not hasty, disposition. Taking into account the seriousness of the offense, which the trial judge and we must consider upon a motion to dismiss for tardiness of trial, the trial court gave that consideration no weight one way or the other. If the crime were one of particular and notable heinousness, it would be entitled to much greater weight in the equation. The defendant was free on a $5,000 bond upon which his grandparents were sureties. The crime of armed robbery was committed by Leonard Johnson with the aid of Peter Kahre, by use of an unloaded gun. He committed the robbery at the behest of defendant Moore, made more than a week before the robbery under threat of physical harm by Moore. As serious cases go, this was not serious enough to shield the case from dismissal for trial delay.

It is no answer under § 545.780, supra, to say that the defendant acquiesced in the delay, if that be the case, or even that he benefited from it. He cannot "waive" the statutory Speedy Trial requirement. It is a rare case indeed where the defendant (if the prosecution has a good case against him, and if he is not incarcerated) will not "waive" his right to a speedy trial. He does not want a trial at all, let alone a speedy one. It is the *public right* to have criminal cases speedily tried, which is the object of this statute's solicitude. This statute says to the courts and to the prosecution, in mandatory terms, "Give the defendant a trial within 180 days' free time, whether he wants it or not. If you do not do so, you risk having to start from scratch and do it all over again and, if the case has gone to judgment, you run the risk of losing your conviction. And to see that you do it, we place a tool in the hands of one who will be interested in taking advantage of your tardiness—the defendant. We make him the enforcer of this statute." The enforcement of this statute will do something for the administration of justice. If the statute is to have its intended long-range salutary effect, we are going to have to lift our eyes from the case immediately before us, and look at the greater good to be achieved by expedition of the trial of criminal cases. We must have the stomach to give a defendant a windfall in order to achieve a more important objective.

There is no doubt in my mind that we should dispose of this case as we did the *Richmond* case: "We have concluded that the defendant has met his burden of showing that the delay in the commencement of his trial was occasioned by the state. The trial court has not justified upon the record the continuances or the denial of the dismissal.

"The cause is remanded with directions that the court order the dismissal of the case either with prejudice or without prejudice as he may determine in his discretion under subsection 5 of the statute." 611 S.W.2d at 357.