**STATE of Missouri, Respondent,**

v.

**Janice Louise HARRIS, Appellant.**

**No. 44457.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 6, 1982.

Motion for Rehearing and/or Transfer
Denied Sept. 17, 1982.

Application to Transfer Denied
Oct. 18, 1982.

Charles M. Shaw, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George Westfall, Pros. Atty., Clayton, for respondent.

CRIST, Judge.

Appeal from a jury conviction of second degree arson, § 569.050, RSMo.1978. The jury assessed a fine of $5,000.00. The trial court suspended execution of sentence and placed defendant on two years probation. We affirm.

On the night of the incident, defendant was at a friend's apartment. Both testified defendant left the apartment to return home sometime around 11:00 p. m. A trip between the friend's apartment and defendant's house takes approximately twenty minutes.

Defendant's neighbor saw her arrive and start for her front door shortly before he retired for the evening. While unsure of the exact time, the neighbor recalled turning off the television program "Nightline" prior to its ending, checking his windows and doors, and then spotting defendant pull up. A spokeswoman for the television station airing "Nightline" testified it went off the air that evening at 11:10:50 p. m.

Upon unlocking and opening her front door, defendant claimed to have smelled and felt smoke. She ran back to her car, and drove to an all-night convenience store to call the fire department, a trip taking approximately four minutes. The store clerk testified defendant entered, browsed for a few minutes, asked for change, and then placed a call at the outside telephone. The clerk said defendant came back in, asked for more change, then made more telephone calls. After defendant placed her last call, the clerk recalled defendant sitting in her car for a couple of minutes and then driving around the parking lot several times before leaving. Defendant had no recollection of the clerk, denied going into the store for change, and claimed she went immediately to the outside telephone upon arriving. She admitted waiting in the parking lot after placing the call, explaining she was afraid to return to her house before the firemen arrived.

Defendant's 911 emergency call was logged at 11:33 p. m. The operator dispatched both police and firemen to the scene. A police officer arrived first, at approximately 11:36 p. m. and the firemen arrived at approximately 11:39 p. m. They found four unrelated fires set with lighted newspaper. The fire set in the utility room, next to a gas dryer, was within four feet of a gallon gasoline can with its spout open. A gasoline powered snowblower was also in the room. The fire had not reached the gasoline can because a water pipe in the room burst, extinguishing the flames. The other fires, in the living room, kitchen, and dining room were extinguished by the firemen in about five minutes.

Due to the number and unrelated nature of the fires, suspicions immediately arose concerning the fires' origin. The policeman on the scene was instructed to keep all persons from the house, including the de-

fendant. A team from the St. Louis County Bomb and Arson Squad, consisting of a police officer and a civilian fire technician, were called to investigate.

When the team arrived, at approximately 12:30 a. m., the firemen were cleaning up. The investigators photographed the location of the fires and seized the gallon gas can. Checking the outside of the house, they found all windows and doors secure, with no evidence of pry marks or burglary. They questioned defendant concerning her finances. Defendant purchased the house two years earlier for $35,900.00, putting $11,000.00 down. She still owed approximately $20,000.00. Her payments were current; she paid $300.00 a month on her monthly mortgage obligation of $275.00. Other outstanding obligations included a balance due of over $500.00 on the drapes, with payments current, and a possible Master Charge balance of $144.00. Besides her home, defendant owned two outstate parcels of real estate inherited from her father. She also had several thousand dollars invested in a credit union.

At trial, the firemen and the members of the Bomb and Arson Squad testified the fires were not accidental. Based on numerous years of fire fighting experience and investigating suspicious fires, they concluded a human element was involved. Further, the testimony indicated no "accelerators" such as gasoline were involved in setting the fires.

▆▆▆ Defendant raises four points in this appeal. First, she claims the photographs of the house and the gasoline can should have been suppressed as evidence unlawfully seized without the benefit of a search warrant. Next she claims error in the introduction of the seized gasoline can and its contents on the grounds of irrelevancy, immateriality, and prejudice due to the witnesses' testimony that no "accelerators" were involved in the fires. Third, she claims the case should have been dismissed for failure to grant a speedy trial. Finally, the defendant claims the jury's verdict was not supported by substantial evidence.

A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry "reasonable." Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze. And once in a building for this purpose, firefighters may seize evidence of arson that is in plain view. *Coolidge v. New Hampshire,* 403 U.S. 443, 465–466, 91 S.Ct. 2022, 2037–2038, 29 L.Ed.2d 564, 582–583 (1970)....

... [O]fficials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional.

*Michigan v. Tyler,* 436 U.S. 499, 509–510, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486, 498–499 (1978). In the present case police and firemen were on the scene no more than three or four hours investigating the cause of the suspicious fire. The evidence seized was within plain view. Defendant's first point is without merit.

▆▆▆ We find the introduction of the gas can and its contents relevant to the issues involved in the crime charged. While accelerators were not used to start the fires, one fire was strategically placed near the gallon gasoline can with its spout exposed. The witnesses explained that if the fire reached the can an explosion would result. Fortuitously the broken water pipe prevented that from occurring. The exposed gas can and its relationship to the intentionally set fire logically tend to establish the knowing intent element in a case of arson. Section 569.050. *See, State v. Berry,* 609 S.W.2d 948 (Mo.1980). Photographs of the utility room indicated the exposed gas can's proximity to the fire from which the jury could reasonably infer that the gas can was an intended instrument in the crime. The trial court has broad discretion in balancing probative value with prejudicial effect in admitting demonstrative evidence. *State v.*

*Holmes,* 609 S.W.2d 132, 135–136 (Mo.1980). There was no error in admitting the gas can into evidence.

Defendant next claims violation of the Missouri speedy trial act which required the trial court to dismiss the charges. Section 545.780, RSMo. 1978. Defendant was arraigned on August 6, 1980 and pleaded not guilty to the charges. On September 11, 1980, defendant filed her motion to suppress the items seized by the fire investigators. The motion was heard on September 17, 1980. On September 25, 1980, the cause was continued by defendant until October 27, 1980. The court overruled the motion to suppress on October 1, 1980. Thereafter the cause was continued "for the parties" on October 30, 1980 to December 1, 1980 and on December 3, 1980 to January 12, 1981. The cause was again continued "for the parties" on February 26, 1981 until March 30, 1981. Defendant filed her motion for a speedy trial or dismissal on March 2, 1981. Before trial began on March 30, 1981, the trial court heard defendant's motion and overruled it.

■ The state admits trial began at least 190 days after arraignment, a technical violation of the statute's 180 day limit. Our independent review of the record indicates defendant was brought to trial at most within 203 days of arraignment. Our calculations do not exclude the continuances made "for the parties" on October 30, 1980, December 3, 1980, and February 26, 1981 because the trial court, in each instance, failed to set forth "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." Section 545.780(3), (5)(a). Nevertheless, we cannot say the trial court abused its discretion in overruling defendant's motion to dismiss. The crime of arson is a serious offense. The circumstances leading to the violation of the 180 day limit included numerous, lengthy continuances granted "for the parties." While we are not able to exclude those continuances in calculating the time elapsed, the record indicates, insofar as the continuances were granted "for the parties," that defendant benefitted, or at least acquiesced, in the granting of the continuances. A dismissal immediately prior to the time set for trial, when both parties are finally prepared, would have a negative impact on the administration of justice resulting in still further delays for the defendant and the public. For these reasons, the trial court did not err in refusing to dismiss the case for a technical violation of the speedy trial act. *See,* § 545.780(5).

■ Finally, defendant claims the evidence is insufficient to support the jury's verdict. We note that arson is usually committed in stealth, without witnesses, and must therefore be proven by circumstantial evidence. *State v. Simpson,* 606 S.W.2d 514, 518 (Mo.App.1980). In making a circumstantial case, "the State was obligated to prove a set of circumstances consistent with each other, consistent with a hypothesis that this [defendant] was guilty and at the same time inconsistent with a hypothesis that [she] is innocent and with every other rational hypothesis except that of guilt. The circumstances must be irreconcilable with the innocence of the accused." *State v. Bunton,* 453 S.W.2d 949, 952 (Mo. 1970) (citations omitted). In reviewing the sufficiency of the evidence supporting the verdict, we view the evidence in a light most favorable to the State and are mindful that the elements of the offense must be supported by substantial evidence. *City of Kansas City v. Oxley,* 579 S.W.2d 113, 115 (Mo. banc 1979). *See, State v. Siraguso,* 610 S.W.2d 338, 343–344 (Mo.App.1980).

In order to make a submissible case on a charge of arson the State is obligated to prove that a building caught on fire; that the fire was incendiary in nature, that is, that the burning was the willful act of some person criminally responsible for his acts, and not by natural or accidental means, and the defendant's agency in the performance of the act.

*State v. Bunton, id.*

■ There is no question a fire occurred at defendant's home. Four unrelated fires, begun with lighted newspaper, provided the

basis for expert opinion concerning the incendiary nature of the fire. Setting the four fires was a willful, knowing act and experts ruled out the possibility of natural or accidental causes. Defendant's point is directed to lack of direct evidence indicating her agency in setting the fires.

The State's hypothesis of defendant's agency in starting the fires was supported by the following evidence. The neighbor observed defendant arrive at her house after he turned off the television program "Nightline" before it ended. This would fix defendant's arrival somewhere between 11:10 and 11:15 p. m. Defendant's claim that she immediately drove to the convenience store to call for help, a four minute drive, would place her at the telephone booth somewhere between 11:14 and 11:19 p. m. Testimony revealed defendant passed numerous homes and businesses in driving to this particular store. The emergency call, however, was not placed until 11:33 p. m., a period of between fourteen and nineteen minutes after she should have reached the phone. The store clerk remembered defendant calmly browsing in the store for several minutes before placing a telephone call. Further, the investigation of the fire revealed no pry marks on windows or doors to the house. Without any sign of forced entry, the experts concluded the house was entered with a key. Defendant was the only person able to unlock the house with a key.

■ Defendant's opportunity to commit the offense, alone, is insufficient to support a conviction for arson. *State v. Odum,* 351 S.W.2d 10, 15 (Mo.1961). The fourteen to nineteen minutes unaccounted for, however, could lead the jury to believe defendant did not leave her home immediately upon opening the door and smelling smoke. Rather, the jury could reasonably infer defendant, upon arriving, expended the unexplained time in spreading newspapers in her home and lighting the match, then delaying her call for help until the fire spread to the exposed gasoline can and engulfed the house in flames. This inference is strengthened by the fact defendant had sole access by key to the untampered house. We find defendant's presence at the scene of the crime at the approximate time the fire was ignited, the fact she was the only person able to enter the house with a key when there were no indications of forced entry, and the significant period of unaccounted time, to be circumstances consistent with the State's hypothesis that she committed arson and sufficient to allow the jury to find defendant guilty beyond a reasonable doubt.

■ Furthermore, we find the evidence inconsistent with defendant's hypothesis of innocence, or with any other rational hypothesis. Even if defendant arrived home as late as 11:20 p. m., immediately discovered a fire and drove for help, she would have reached the telephone by at least 11:25 p. m. Yet the emergency call was not placed until 11:33 p. m., a significant and unexplained eight minute gap in time. Defendant's attempt to prove innocence by way of alibi fails, even when considering the evidence in a light favorable to her, because the eight minutes of unexplained time would be sufficient to have struck the match. Moreover, the distance defendant traveled in seeking emergency help, coupled with the unexplained delay, are patently inconsistent with a bona fide attempt to seek help in putting out a fire in her house. The circumstances presented by the State are irreconcilable with defendant's innocence. The sufficiency of circumstantial evidence supporting a conviction need not demonstrate the impossibility of innocence. *State v. McCall,* 602 S.W.2d 702, 704 (Mo. App.1980).

For the foregoing reasons, judgment is affirmed.

GUNN, P. J., and SIMON, J., concur.