**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Jerry Lloyd COLLINS,
Defendant-Appellant.**

No. 65285.

Supreme Court of Missouri,
En Banc.

May 15, 1984.

Frederick W. Martin III, West Plains, for defendant-appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

BLACKMAR, Judge.

The appellant was charged with selling marijuana in violation of § 195.020, RSMo 1978. He moved to dismiss the information pursuant to Missouri's "speedy trial act," § 545.780.[1] The trial court overruled the motion and the jury found the defendant guilty. He appealed to the Court of Appeals, Southern District, alleging (1) violation of the speedy trial act, and (2) error in the admission of evidence. The Court of Appeals held that he was not entitled to relief under the speedy trial act but that there was reversible error in the admission of evidence. We granted transfer on the appellant's motion because of the substantial number of appeals involving the speedy trial act.[2] We of course decide the case as on original appeal and reach the same conclusion as did the Court of Appeals.

## I.

The defendant was charged by information on June 9, 1981 and was arraigned on July 6, 1981. The trial did not commence until July 9, 1982, 368 days after arraignment. The record contains little in explanation of this long delay.[3] There was, in particular, a failure of compliance with § 545.780–3(5)(a) (emphasis supplied):

Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant's attorney, or the defendant, or at the request of the prosecuting attorney if the continuance is consented to by the defendant's attorney or the defendant and *if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the benefits of a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this section unless the court sets forth, in the record of the case, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial;*

Nor was there substantial compliance with the provisions of § 545.780–5:

The court shall make a record showing the action taken in regard to the dismissal or continuance of the case and show on the record the reasons for such action.

▋ Failure of the trial court to comply with these provisions, however, does not require dismissal of an indictment or information. Section 545.780–5 (emphasis supplied) provides as follows:

*If the defendant is not brought to arraignment or trial within the time*

---

1. Repealed by H.C.S.S.C.S.S.B. 602, 82d General Assembly, 2d Session (1984), and replaced by a provision placing the burden on the defendant to request a trial (awaiting Governor's signature).

2. *See, e.g., State v. Hulsey,* 646 S.W.2d 881 (Mo. App.1983); *State v. Moore,* 642 S.W.2d 917 (Mo. App.1982); *State v. Reed,* 640 S.W.2d 188 (Mo. App.1982); *State v. Harris,* 639 S.W.2d 122 (Mo. App.1982); *State v. Ratliff,* 633 S.W.2d 267 (Mo. App.1982); *State v. McClure,* 632 S.W.2d 314 (Mo.App.1982).

3. Trial was originally set for September 15, 1981. The cause was continued to February 2, 1982 and again to April 16, 1982 with no explanation or intervening docket entries. The docket sheet does reflect that defendant changed counsel twice and was free on bond while the cause was pending. There were also other charges pending against defendant.

*limit required by this section, the trial judge may dismiss the information or indictment* upon motion by the defendant and a showing by defendant that the failure to have the trial commence within time limits specified herein was occasioned by the state. *The case may be dismissed with or without prejudice at the discretion of the court.* In determining whether to dismiss the case, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of this section and on the administration of justice.

The speedy trial act, despite the requirement of detailed findings, has no teeth. Dismissal of an indictment or information is purely a matter for the discretion of the trial judge. One who would challenge this exercise of discretion must meet the very substantial burden of demonstrating an abuse of discretion. Counsel should realize that success on appeal is very unlikely if the trial judge declines to dismiss the case. We are totally unable to say that the delay involved in this case was so great that the denial of the motion to dismiss could be said to constitute an abuse of discretion.

The detailed findings required by the speedy trial act are essentially addressed to the trial judges themselves. Judges of course should make the findings required by statute. An appellate court, if not informed as to the trial court's reasoning, may be more likely to find abuse of discretion. Failure to make findings, however, does not necessarily call for remand with directions to supplement the record. We will not order a useless act. The judge who tried this case is no longer in office, and there would be substantial difficulty in reconstructing the chronology of and reasons for the continuances. We see no need for a remand for this purpose. A trial judge, for example, might decide in his discretion that dismissal should not be or-

dered, even though the delays are solely occasioned by the state, and so detailed findings would not be necessary.

We conclude that the defendant has not established a right to dismissal and that no specific directions regarding the speedy trial act are necessary at this stage of the proceeding.

## II.

Art Howell was an undercover informant employed by the West Plains Police Department. He testified that he had known the defendant for several years and that he had purchased marijuana from the defendant on September 26, 1980, which was the date charged in the information.

The defendant testified in his own defense that he had seen Howell on only one occasion prior to the trial, in early August of 1980, when Howell was riding in a car driven by his uncle, David Woods. The defendant said that Woods got out of the car and socialized with a group at a barbecue at the defendant's house but that Howell remained in the car. The defendant's testimony was corroborated by two other witnesses.

The prosecution called David Woods in rebuttal, and he then testified as follows:

Q  And what did you all do when you got out, Mr. Woods?

A  I asked Bud [the defendant] if there was any pot around cause Arthur was looking for some, and he said, "Yeah—"

Defense counsel objected. The objection was overruled and the examination continued as follows:

Q  What happened when you all got out of the car?

A  Well, we all sat down at the table there, and I asked Mr. Collins if there was any pot around; he said, "Yeah." The pot came up, Arthur got the pot and we left.

Q  Arthur got the pot from who?

A  Bud Collins.

■ The trial court committed prejudicial and reversible error by receiving this evidence. The state had every right to impeach the defendant's testimony about his acquaintance with Howell by showing that they had met face to face on a prior occasion, but it was neither necessary nor proper to mention the criminal conduct. The trial court expressly sanctioned the improper evidence by overruling the objection and allowing the examination to continue. The state's purpose could have been served by simply asking Woods whether Howell had had a conversation with the defendant.

■ There are situations in which evidence of other crimes may be admitted in support of such issues as "motive, intent, the absence of mistake or accident, common scheme or plan . . ., or the identity of the person charged . . . ." *State v. Shaw*, 636 S.W.2d 667, 672 (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188. When the appropriate showing cannot be accomplished without establishing the commission of other crimes, the defendant must bear the burden as well as he can.[4] In the present case, however, proper impeachment could be had without introducing evidence of other crimes, which is highly prejudicial, *State v. Griffin*, 662 S.W.2d 854 (Mo. banc 1983) (Blackmar, J., dissenting), and should be received only when there is strict necessity. Here the prejudicial effect outweighs the necessity for and probative value of the testimony.

Our conclusion is supported by *State v. Carter*, 475 S.W.2d 85 (Mo.1972) and *State v. Burr*, 542 S.W.2d 527 (Mo.App.1976). We find no support for the state's argument that evidence of unrelated crimes is subject to challenge only if it demonstrates that the defendant has been charged with or convicted of the crime in question.

*State v. Wright*, 582 S.W.2d 275 (Mo. banc 1979); *State v. Holbert*, 416 S.W.2d 129 (Mo.1967).

■ The defendant also complains of prejudicial error in the admission of the testimony of Chief of Police Harry Reavis that Howell had testified regarding the purchase of controlled substances from other persons, and that his trust in Howell has been well founded. The testimony of sales to third persons was introduced to explain the delay between the date of the sale and defendant's arrest and was not facially improper. The testimony about Howell's trustworthiness was offered on redirect after defense counsel attempted to cast doubt on Howell's character. There might be occasion for both offers of evidence. The evidentiary situation may not be the same on retrial, and so it is not necessary to treat of these points further.

■ We find no error in allowing the state to show the sentences received by Joanna Romans, the defendant's former wife who testified for him, after she admitted that she had been convicted, with imposition of sentence suspended and probation, which was later revoked. She did not testify as to the length of the sentence then imposed. The sentence may be shown when conviction is relied on for impeachment. *State v. Taylor*, 589 S.W.2d 302, 304 (Mo. banc 1979); *State v. Sullivan*, 553 S.W.2d 510, 515 (Mo.App.1977).

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

RENDLEN, C.J., and HIGGINS, GUNN and BILLINGS, JJ., concur.

DONNELLY, J., concurs in result.

WELLIVER, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER, Judge, concurring in part and dissenting in part.

I concur in Part II of the principal opinion but I must dissent as to Part I. It is

---

4.  *See, e.g., United States v. Engleman,* 648 F.2d 473 (8th Cir.1981); *United States v. Calvert,* 523

F.2d 895 (8th Cir.1975).

indeed regrettable that we fail to avail ourselves of this opportunity to establish a rule that will ensure compliance with the speedy trial statute, especially since the case is being remanded on another ground. We transferred this case to resolve the uncertainty our appellate courts have experienced as they attempt to review speedy trial claims with records lacking the findings required by § 545.780. I fear that the Court's decision will only make a bad situation worse. Prior to today's decision we could only regret that trial courts failed to make the required findings as we inferred, second guessed and speculated our way through speedy trial claims with deficient records. As a result of the Court's decision, our appellate courts must undertake this thankless and difficult task knowing the trial court violated the statute with the blessing of the Supreme Court.

The principal opinion states "[t]he speedy trial act, despite the requirement of detailed findings, has no teeth." I respectfully submit that the absence of teeth is far more attributable to this Court's dentistry than to any deficiency in the statute as passed by the legislature. I know of no better way to demonstrate this fact than to set forth in full the opinion I had proposed to the Court:

Appellant contends the speedy trial statute, § 545.780, requires dismissal of the charge pending against him. Appellant alleges and the record shows that he was neither arraigned within ten days of the filing of the charge against him nor brought to trial within 180 days of arraignment, as required by the statute. Appellant further contends that, inasmuch as the delays were occasioned by the state, the trial court erred in denying his motion to dismiss the charge since such relief is authorized by the state.

A

The predecessor to our present speedy trial statute, § 545.780, RSMo 1969, provided only that

All indictments and informations shall be tried at the term at which the indictment is found or information filed, if the defendant is in custody or appears at such term, or at the first term at which the defendant appears, unless the same be continued for cause.

The current version of § 545.780, enacted in 1977, constitutes a significant departure from the provision it replaced. The statute is a comprehensive legislative scheme designed to prevent interminable delays in bringing cases to trial by placing an upper limit on the length of allowable delays after which a defendant may move to dismiss the charges. Close examination of this scheme reveals that its key feature is a system for determining which, and under what circumstances, delays may be excluded from the statutory time periods:

1. [Arraignment shall be within 10 days after the filing of an information or an indictment]

2. [Trial shall be within 180 days after arraignment]

3. [The following delays are excludable:]

(1) [Delay resulting from other criminal proceedings involving the defendant "including but not limited to:"]

(a) [Mental examination of defendant]

(b) [Trials of other charges against defendant]

(c) [Hearings of pre-trial motions]

(d) [Change of venue]

(e) [Under advisement by court not to exceed 30 days]

(2) [Unavailability of defendant or essential witness]

(3) [Mental incompetency of defendant or physically unable to be tried]

(4) [Delay when defendant is joined for trial with a co-defendant]

(5) (a) "Any period of delay resulting from a continuance granted by any judge on his own motion or at the

request of the defendant's attorney, or the defendant, or at the request of the prosecuting attorney if the continuance is consented to by the defendant's attorney or the defendant and if the judge granted such continuance on the basis of his *findings that the ends of justice served by taking such action outweigh the benefits of a speedy trial. No* such period of delay resulting from a *continuance* granted by the court in accordance with this paragraph *shall be excludable* under this section *unless the court sets forth, in the record of the case, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial;*

(b) No continuance shall be granted because of general congestion of the court's calendar or lack of diligent preparation or failure to obtain available witnesses on the part of the prosecuting attorney."

4. [If granted a new trial, defendant shall be tried within sixty days with certain exceptions]

5. "If a defendant is not brought to arraignment or trial within the time limit required by this section, *the trial judge may dismiss the information or indictment upon motion by the defendant and a showing by defendant that the failure to have the trial commence within time limits specified herein was occasioned by the state.* The case may be dismissed with or without prejudice at the discretion of the court. In determining whether to dismiss the case, the court shall consider among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this section and on the administration of justice. *The*

*court shall make a record showing the action taken in regard to the dismissal or continuance of the case and show on the record the reasons for such action.* Failure of the defendant to move for dismissal prior to trial shall constitute a waiver of the right to dismissal under this section. If the charge was dismissed by the court without prejudice and thereafter a charge is filed against the defendant for the same offense or an offense required to be joined with that offense, the time elapsed between the date the original charge was dismissed to the date the subsequent charge was filed shall be included for purposes of computation of the allowable time to arraign the defendant and commence the trial."

6. [Nothing herein shall modify or repeal § 510.120]

§ 545.780 (emphasis added).

## B

Appellant was charged by information on June 9, 1981. He was arraigned on July 6, 1981, 27 days after the filing of the information, at which time he entered a plea of not guilty. The case was set for trial on September 15, 1981. The trial ultimately commenced on July 9, 1982, 368 days after arraignment.

The record in this case offers little by way of explanation for this long delay. Nothing in the record discloses why appellant was not tried on September 15, 1981, the date originally set. An entry on November 2, 1981, indicates that the trial was rescheduled for February 2, 1982. On February 4, 1982, the trial was again rescheduled, to April 16, 1982. On that date appellant appeared in court without counsel. He again appeared on April 22, 1982, when his attorney was permitted to withdraw. Appellant was next in court on May 3, 1982, again without counsel. Finally, on May 17, 1982, appellant appeared in court with new counsel and trial was set for July 2, 1982.

During his appearance on May 17, appellant filed a motion to dismiss pursuant to § 545.780. The trial court overruled the motion without explanation on May 20, 1982. An entry on July 1, 1982, indicates that the state requested a continuance on the ground that appellant just answered its motion for disclosure. Trial was rescheduled for July 9, 1982. Appellant was tried and convicted on that date.

At the end of trial appellant renewed his motion to dismiss. Respondent attempted to explain the various delays and the trial court again summarily overruled the motion without making any of the findings required by the speedy trial statute.

The Southern District observed that "[t]he record does not explain why it took 368 days after his arraignment to bring defendant to trial." Nevertheless, the court concluded that appellant had failed to demonstrate that the delay was occasioned by the state. According to the court of appeals, "[t]he failure of the trial judge to make findings upon the record regarding the continuances does not relieve the defendant from that burden."

C

The meager record in this case is representative of cases coming before our appellate courts raising claims under the speedy trial statute. We know of only a single case which it can be said that the record was in substantial compliance with the requirements of § 545.780.[1] Appellate courts, in an effort to avoid reversing cases otherwise fairly tried, in general have strained facts, indulged presumptions and inferences and couched holdings in terms of either the state's or defendant's burden of proof. See, e.g., State v. Moore, 642 S.W.2d 917 (Mo.App.1982); State v. Reed, 640 S.W.2d 188 (Mo.App.1982); State v.

Harris, 639 S.W.2d 122 (Mo.App.1982); State v. Ratliff, 633 S.W.2d 267 (Mo.App. 1982); State v. McClure, 632 S.W.2d 314 (Mo.App.1982). While appellate courts have pursued this course, trial courts have become progressively more lax in their enforcement of the statute and delays have grown longer and longer. See e.g., State v. Richmond, 611 S.W.2d 351 (Mo.App.1980) (142 days); State v. Harris, supra, (203 days); State v. Reed, supra, (294 days); State v. Moore, supra, (361 days); State v. Hulsey, 646 S.W.2d 881 (Mo.App.1983) (251 days). Continuing this course can only result in further erosion of the right of defendants and the public to a prompt disposition of criminal matters.

Prior to adoption of the present statute, so long as the case was continued for cause at the request of either of the parties, nothing short of a violation of the speedy trial guarantees of the Sixth Amendment of the U.S. Constitution and art. I, § 18(a) of our state constitution prevented indefinite postponement of the trial and final disposition of criminal charges. The constitutional right to a speedy trial by no means guaranteed a prompt trial, with decisions holding that delays · of many months or even years are not intolerable. See Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. West, 484 S.W.2d 191 (Mo.1972); State v. Harper, 473 S.W.2d 419 (Mo. banc 1971).

Our state speedy trial statute is directed at disposing of all criminal cases within a specified time: arraignment within ten days of the filing of charges, trial within 180 days of arraignment, and any retrial within sixty days of such order. In addition to giving effect to a defendant's right to a speedy trial, the statute specifically recognizes the right of the public to a reasonably prompt disposition of criminal matters. The statute recognizes that some

---

**1.** During the pendency of this appeal, the Court reviewed an application to transfer in the case of *State v. Henderson,* 667 S.W.2d 33 (Mo.App. 1983) [No. 65841; application for transfer denied April 16, 1984], in which the appellant raised speedy trial questions. The Eastern District indicated in its opinion that the trial court had made the findings required by the statute. *Id.* at 35.

delays are unavoidable and, thus, the statute allows for the exclusion of certain specified delays. *See* § 545.780.3.

With respect to delays caused by continuances, whether granted on the court's own motion or at the request of either party, § 545.780.3(5)(a) provides:

No such period of delay resulting ... [therefrom] shall be excludable under this section unless the court sets forth, in the record of the case, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

*Id.* In making such findings, the statute mandates consideration of the public's interest, as well as the defendant's interest in a speedy trial. The trial judge is prohibited from continuing cases because of "congestion of the court's calendar or lack of diligent preparation or failure to obtain available witnesses on the part of the prosecuting attorney." § 545.780.3(5)(b). In the absence of the required findings the statute provides that the delay resulting from the continuance may not be excluded when calculating the 180 day period. § 545.780.3(5)(a).

In cases where a defendant proves that he or she is entitled to relief under the statute, § 545.780.5 grants trial courts considerable discretion in determining whether to dismiss the charges and whether a dismissal should be with or without prejudice. The statute enumerates several factors trial courts must weigh as they select the appropriate relief for the defendant, including "[t]he seriousness of the offense; the facts and circumstances of the case that led to the dismissal and the impact of a reprosecution on the administration of this section and on the administration of justice." *Id.* The trial court must, however, "make a record showing the action taken ... and show on the record its reasons for such action." *Id.* *See State v. Hulsey, supra,* at 883 (without such a record "we have no basis for finding an exercise of

discretion pursuant to the standards set forth in the statute"). This we deem to be a small price to pay to ensure compliance with the statute and realization of its purpose.

We know of nothing that would require appellate courts to reverse cases outright for failure to comply with the terms of the statute. Giving effect to legislative intent does in our opinion require that in instances where the record fails to comply with the terms of the statute, appellate courts should remand the case for completion of the record prior to appellate review. We are aware that remand of all such cases prior to appellate review requires trial courts to make post-trial determinations of the reasons for pre-trial rulings. We are convinced that our permitting post-trial perfection of the record in this case and in other cases best serves the ends of justice without impinging on the rights of defendants or the public under the statute. The ease with which claims under § 545.780 can be reviewed when trial courts comply with the statute is illustrated by *State v. Henderson,* 667 S.W.2d 33 (Mo.App.1983) [No. 65841; application for transfer denied April 16, 1984], wherein the court stated:

The legal file before us reflects, with the exception of the first continuance, that the judges maintained a scrupulously detailed record showing upon whose motion each of the continuances was granted, together with a specific reason to support the finding of the Court that the ends of justice served by the granting of the continuance outweigh the best interest of the public and the defendant in a speedy trial, as required by § 545.780.-3(5)(a).

*Id.* at 35. The complete record enabled the court to forthrightly dispose of the claims raised.

We are not without precedent in so handling the matter. We have followed a similar procedure in cases in which trial courts have failed to make findings concerning the voluntariness of confessions, *see State v.*

*Taggert,* 443 S.W.2d 168, 171 (Mo.1969), and in cases in which trial courts did not make the findings required by the now-repealed Second Offender Act, § 556.280, RSMo 1969, *see State v. Hawkins,* 418 S.W.2d 921, 927 (Mo. banc 1967).

Some trial judges may believe that compliance with the provisions of the speedy trial statute may be an onerous burden. We do not view the statute as unduly burdening trial courts. Nothing we have said herein goes beyond what the legislature plainly mandated when it enacted § 545.-780. Since we cannot say that the legislature has employed unreasonable means to achieve its goal of prompt and speedy dispositions of criminal cases, we are obliged to enforce its manifest intent.

On remand, the trial court [should be] directed to supply the findings required by the statute and then to enter of record its findings consistent with the statute and this opinion.

\*        \*        \*

I file this lengthy dissent recognizing that this may be the last case interpreting the current speedy trial statute. During the pendency of this appeal, the legislature amended § 545.780 by eliminating both the 180-day rule and the need for explanations of all delays in the record.[2] Emasculation of the statutory right to a speedy trial means that such claims henceforth must be reviewed under the strictures of the Sixth Amendment or art. I, § 18(a) of our state constitution. Without the present statutory scheme, it is even more important that trial courts give us the benefit of record findings concerning trial delays. On all claims brought under the constitutional provisions,[3] both the trial court and we will be subject to review by the federal courts.

---

**2.** *See* H.C.S.S.C.S.S.B. 602, 82nd General Assembly (1984) (enacted April 29, 1984, currently awaiting the Governor's signature).

**3.** We previously have indicated that the speedy trial guarantee of art. I, § 18(a), Mo. Const., is equivalent to that of the Sixth Amendment. *See State v. Bolin,* 643 S.W.2d 806, 811 n. 5 (Mo. banc 1983).