STATE of Missouri, Respondent,

v.

Michael ANDERSON, Appellant.

No. WD35347.

Missouri Court of Appeals,
Western District.

Feb. 26, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 2, 1985.

Application to Transfer Denied April 30, 1985.

Robert G. Duncan, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Michael H. Finkelstein, Asst. Atty. Gen., for respondent.

Before KENNEDY, J.P., and DIXON and CLARK, JJ.

DIXON, Judge.

Anderson was convicted of first degree murder, Section 565.003 RSMo 1978, committed in the course of an attempted robbery, and was sentenced to life imprisonment. He asserts the court erred in (1) overruling his motion to dismiss because of alleged statutory and Sixth Amendment speedy trial violations; (2) admitting, over objection, testimony about another crime; and (3) denying his requests for a mistrial

because of portions of the state's argument. Affirmed.

On the evening of February 24, 1981, Anderson, Brower, and Wakefield attempted to rob a service station at 12th and Van Brunt in Kansas City. Approximately two weeks earlier, Anderson, Wakefield, and Tricarico had attempted to rob the same station, with Wakefield wielding a gun, but when the attendant pulled a gun, they fled. Around February 24, Anderson approached Wakefield about again attempting to rob the same station. At trial, Wakefield testified, "[H]e asked me if I wanted to go rob the place and I told him no I didn't want to rob it, I attempted it once and they tried to pull a gun on me ... I just told him I wasn't going down there to rob the place because I didn't want to have to shoot nobody to take their money...." Wakefield agreed to drive the car on the 24th but did not otherwise participate in the robbery attempt. Anderson and Brower, both wearing ski masks and with Anderson carrying a .32 caliber gun owned by Wakefield and Tricarico, approached the station building. The attendant, Walter Messer, was inside and the door was locked. Shots were fired from the .32, the three men escaped, and passersby, who finally managed to break into the station, found Messer suffering from a fatal gunshot wound.

Cynthia Salyer, who was driving past the station, stated she saw two men wearing ski masks, but was unable to identify them. Debbie Alexander, one of the girls who lived with Wakefield, Brower, and Tricarico, testified that, on February 25, 1981, a friend of Wakefield's, Carrie Richardson, was at their home and "was coming down the stairs and she asked Mike [Anderson] if he had killed the guy, and Mike made the remark 'Hell, I don't know. I didn't stick around to find out.' " Wakefield testified that, one week after the murder, he heard Anderson admit he had shot Messer. Wilford Keeling, who, in March, 1981, saw Anderson at a neighbor's house, testified that he heard Anderson make a statement that Anderson "had gotten off on what he had done because of the fact that they

didn't find the weapon that did the crime, or that they couldn't have anybody testify against him because the only witness that was allowed to testify was dead, because he shot him." David Weiss, incarcerated in the Jackson County Jail, as was Anderson, in September, 1981, testified Anderson "had told me he was in there for shooting a man, for murder ... He told me he gave the gun to a guy named Tommy and told him to sell it and that he wished he hadn't because he had wished he throwed it in the river to get rid of it, of the evidence." The weapon was recovered by the police from a third party and the ballistics expert identified it as the weapon that killed Messer.

Anderson was originally arraigned for Messer's murder April 9, 1981, but the indictment was dismissed October 26, 1981, for a "current lack of evidence sufficient to prove guilt." The evidence adduced at trial was available at the time of the dismissal. Wakefield's statement was given March 11, 1981, the passerby's testimony was given the night of the killing, Debbie Alexander gave her statement October 15, 1981, and David Weiss gave a statement October 12, 1981. Keeling came forward on December 13, 1982, and only his testimony was unavailable at the time of the dismissal.

On August 20, 1981, while incarcerated, and pending resolution of the Messer case, Anderson was charged with sodomy. On this charge, he was later tried and acquitted. The record before this court does not reflect the time involved in the actual trial. From October 27, 1981, to early April 1982, Anderson was not in custody. On April 16, 1982, he was indicted for another, unrelated murder. The case was tried, resulting in a hung jury. The charge was later dismissed on June 30, 1983.

Anderson was re-indicted for the Messer murder on January 21, 1983, and was arraigned on January 31. He requested three continuances (continued March 7 to April 4, May 31 to July 5, and July 18 to August 15), which were granted. On August 15, 1983, Anderson filed a motion to dismiss, asserting statutory and constitutional speedy trial violations, which was denied. Trial began August 22, 1983. During argument, the assistant prosecutor referred to Carrie Richardson as Anderson's girlfriend and later stated that if Anderson were not guilty beyond a reasonable doubt, no one in Jackson County had ever been guilty beyond a reasonable doubt. Both statements drew requests for a mistrial, which were denied. The trial court also instructed the jury to disregard the statement that Carrie Richardson was Anderson's girlfriend.

Anderson first asserts the court erred in denying his motion to dismiss because of an alleged denial of his right to a speedy trial, in derogation of Section 545.780 RSMo 1978[1] and the Sixth Amendment. The record demonstrates a delay of twenty-seven months from the dismissal to the re-indictment.

■ Anderson has divided his argument on this point into two basic subsections. He first asserts a violation of his right to a speedy trial because more than 180 days elapsed between his January 31, 1983, arraignment and August 22, 1983, the date of trial. Of these 203 days, 92 are excludable due to continuances granted by the trial court pursuant to Anderson's requests. Section 545.780.2; *State v. Britt,* 651 S.W.2d 566 (Mo.App.1983); *State v. Reed,* 640 S.W.2d 188 (Mo.App.1982). Thus, as to this time period, Anderson was brought to trial well within the 180 day limit.

Anderson also asserts his motion should have been sustained because of the 27-month delay between the dismissal of the first indictment and the second indictment, in violation of Section 545.780.5, which states, in pertinent part:

If the charge was dismissed by the court without prejudice and thereafter a charge is filed against the defendant for the same offense or an offense required to be joined with that offense, the time elapsed between the date the original charge was dismissed to the date the subsequent charge was filed shall be in-

1. All statutory references are to RSMo 1978 unless otherwise indicated.

cluded for purposes of computation of the allowable time to arraign the defendant and commence the trial.

The Eastern District, in a comprehensive analysis, discussed the statute's clear mandate. *State v. Lawson*, 630 S.W.2d 185 (Mo.App.1982). After holding a nolle prosequi is the equivalent of a dismissal without prejudice, the *Lawson* court stated, "[T]he quoted language in Section 545.-780.5 therefore should be applicable to this situation and the time should start at the time of the filing of the nolle prosequi. To hold otherwise would make the statute a nullity. To hold otherwise would permit the state to file a nolle prosequi and start it all over again time after time whenever the 180 day limit approached." *Lawson*, 630 S.W.2d at 189. In *State v. Mauldin*, 669 S.W.2d 58, 59–60 (Mo.App.1984), in the analogous situation of a mistrial and subsequent retrial, wherein a delay of over the sixty-day period mandated by the statute occurred, the court held a dismissal was required. The court noted that no part of the delay was attributable to the defendant and that the statute created a duty on the state's part to re-try the defendant within sixty days.

Based on the authority cited, the defendant's position would have to be sustained. The state, however, cites *State v. Collins*, 669 S.W.2d 933 (Mo. banc 1984), asserting the rule of that case requires affirmance. *Collins* undoubtedly abolished any viable claim by a defendant of trial court error for refusing to enforce the provisions of the speedy trial act by dismissal. The *Collins* court said, "Dismissal of an indictment or information is purely a matter for the discretion of the trial judge. One who would challenge this exercise of discretion must meet the very substantial burden of demonstrating an abuse of discretion." *Id.* at 935. Further, the *Collins* court stated, "A trial judge, for example, might decide in his discretion that dismissal should not be ordered, even though the delays are solely occasioned by the state and so detailed findings would not be necessary." *Id.*

*Collins*, thus, overrules *State v. Richmond*, 611 S.W.2d 351 (Mo.App.1980), which, in a thoughtful and thorough analysis, held that the trial judge's discretion was narrow and subject to review in light of the detailed findings required by the statute. *Id.* at 355–356.

*Collins* gives no guidance for a review for "abuse of discretion," nor suggests a basis for such a review, given the ruling that findings are unnecessary.

■ *Collins* seems to make the discretion of the trial court subject only to limited judicial review. Ordinarily, such discretion, with limited review, is a discretion based upon the trial court's perception of court room incidents, which cannot be evaluated upon the transcript alone. *Stapleton v. Griewe*, 602 S.W.2d 810 (Mo.App. 1980).

■ The trial court was aware, when the motion was ruled, that the delay between the indictments was 27 months. The court was aware of the other charges of sodomy and murder. The state responded to the defendant's motion by stating that witness Weiss had been "unavailable." The defendant did not contest that statement, despite earlier statements that "the evidence was available" to the state. Defense counsel, however, conceded that the state's agreement with Wakefield was of recent origin, and, of course, absent his plea bargain in exchange for his testimony, he would have been unavailable to the state. There is no showing that any of the delay was attributable to the defendant. The trial court under *Collins* had a virtually unlimited discretion to deny the dismissal, despite lack of any delay attributable to the defendant. The defendant has offered nothing to show an abuse of discretion except the delay occasioned by the state. *Collins* binds this court, and the point is denied.

■ Anderson also asserts that his speedy trial rights under the Sixth Amendment were violated. Under the principle enunciated in *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696

(1982), the period between the dismissal of the first indictment and defendant's rearraignment on the same charges does not count in determining Sixth Amendment speedy trial violations. Therefore, the only periods at issue are those during which Anderson was actually under indictment for Messer's murder, April 9, 1981—October 26, 1981, and January 31, 1983,—August 22, 1983.

■ In *Barker v. Wingo,* 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2191–94, 33 L.Ed.2d 101 (1972), the court stated the basic principles to be weighed and balanced in this situation: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the resulting prejudice to the defendant. Missouri courts have followed this procedure in determining whether a Sixth Amendment speedy trial violation has occurred, *see,* e.g., *State v. Buckles,* 636 S.W.2d 914, 919 (Mo. banc 1982), and have further refined the question of resulting prejudice to the defendant by considering (1) the prevention of undue or oppressive incarceration; (2) the minimization of anxiety; and (3) the limitation of the defendant's ability to defend himself. *State v. Haddix,* 566 S.W.2d 266, 274 (Mo.App. 1978). If the delay is due to the prosecutor's deliberate attempt to gain an advantage, *State v. Holmes,* 643 S.W.2d 282 (Mo. App.1982), on balance it will be counted heavily against the state.

■ Here, the applicable delay periods totalled some 13 months. Of the second period of 7 months, Anderson's requests for continuances accounted for almost half of the delay. There is an absolute dearth of information as to the reasons for delay in the first period. Anderson's ability to defend himself was not limited by the delay, for, presumably, discovery would have disclosed the witnesses. Anderson was not incarcerated all of the time, and there is no showing that the delay hampered his defense. Given the several charges against Anderson, any anxiety could not be attributed to this charge. Thus, under the *Barker* test, as interpreted by the Missouri

courts, Anderson's Sixth Amendment right to a speedy trial was not violated.

■ Anderson also asserts the court erred in admitting testimony about the prior robbery attempt by Anderson, Wakefield, and Tricarico, as it constituted evidence of other crimes. The court admitted the evidence as showing motive and intent to rob the station again, which it plainly does.

While the prior robbery attempt shows Anderson's motive and intent to carry a gun and attempt to rob the same service station some two weeks later, it also demonstrates a common scheme or plan. In early February, Anderson and his friends, carrying a gun, attempted to rob a service station at 12th and Van Brunt but, because the attendant in turn brandished a gun, they fled. In late February, however, Anderson approached his friends about again attempting to rob the same station. Again they approached the station armed with a gun. Again they tried to gain access to the building and the money inside. It is well-established that "[a] prior similar crime may be shown to establish a defendant's common scheme." *State v. Young,* 643 S.W.2d 28, 30 (Mo.App.1982). Evidence of the earlier attempted robbery of the same station, using the same *modus operandi,* and involving most of the same people was properly admitted. The great similarity between the two attempts sufficiently established a common scheme or plan.

■ Anderson also asserts the court erred in denying his requests for a mistrial when the assistant prosecutor argued, first, that Carrie Richardson was Anderson's girlfriend and second, that if Anderson was "not guilty beyond a reasonable doubt, nobody in Jackson County has ever been guilty beyond a reasonable doubt." The court denied Anderson's requests for a mistrial, but sustained his objection and instructed the jury to disregard the "girlfriend" comment. The court stated, "That's counsel's argument," regarding the "guilty" argument.

Anderson asserts the prejudice caused by the "girlfriend" comment was not cured by the trial court's action. Carrie Richardson

is only mentioned in the transcript as a friend of Wakefield's. While the reference to her as Anderson's girlfriend may not be justifiably drawn from the evidence, it cannot be said that the statement furnished a ground for a mistrial. The trial court, who saw the incident, could judge its prejudicial impact on the jury. *State v. Raspberry,* 452 S.W.2d 169, 173 (Mo.1970); *State v. Hubbard,* 659 S.W.2d 551, 558 (Mo.App. 1983). It did not err in not declaring a mistrial, but properly limited any prejudicial effect the statement may have had by sustaining counsel's objection and instructing the jury to disregard. *State v. Hubbard,* 659 S.W.2d 549, 551 (Mo.App. 1983).

■ Likewise, the court did not err in not declaring a mistrial following the assistant prosecutor's "guilty" argument. The prosecutor's comment was based on a detailed review of the evidence and, as such, his argument was permissible. *State v. Hampton,* 653 S.W.2d 191, 195 (Mo. banc 1983); *State v. Jones,* 604 S.W.2d 665, 668 (Mo.App.1980).

The judgment and conviction are affirmed.

All concur.